## GEORGE ALVERDES v. ST. PAUL GASLIGHT COMPANY.[1]

July 28, 1911.

Nos. 17,174—(237).

**Gas — defendant not liable for defective pipe upon private property.**

The acceptance by the defendant of an order from plaintiff to furnish such meters and connections as should be necessary to supply gas for the premises occupied by him as a tenant did not make the defendant liable for damages resulting from a shortage in the supply of gas, caused by defects in a distributing pipe within the building over which defendant had no control.

Action in the municipal court of St. Paul to recover $100 for breach of contract to furnish gas for cooking. The substance of

1Reported in 132 N. W. 275.

the complaint and answer will be found in the opinion. The reply alleged that plaintiff had no knowledge sufficient to form a belief as to the cause of defendant's failure to supply gas, but, whatever was the cause, defendant undertook and assumed to remedy the same and thereby added to the injuries sustained by plaintiff, by increasing the time during which the failure to supply gas continued. The case was tried before Hanft, J., who made findings of fact and as conclusion of law found that defendant was liable under the circumstances for the damage to plaintiff for the lack of gas supplied on the dates mentioned, and that plaintiff was entitled to judgment for $40. From an order denying defendant's motion for a new trial, it appealed. Reversed and new trial granted.

*How, Butler & Mitchell* and *William G. Graves,* for appellant.

*Frederic A. Pike,* for respondent.

LEWIS, J.

The plaintiff brought this action to recover damages for failure to furnish the plaintiff with gas at his restaurant, and the defendant appeals from an order denying defendant's motion for a new trial.

The complaint alleges that the defendant made a contract with the plaintiff whereby the defendant agreed to supply him with gas, for cooking purposes, at the Old Heidelberg Restaurant in the city of St. Paul, and that on two or three occasions the defendant failed to furnish gas in accordance with the terms of the contract. The answer alleges that the premises were occupied by the plaintiff as a tenant, and were a part of the building known as the Grand Opera House Building, in which were several other tenants and occupants; that the Grand Opera House Building was equipped with a system of pipes for the distribution of gas, which were installed by the owner or lessor by means of which gas was distributed to the various tenants and occupants from the general service pipe connected with the defendant's mains; and that it performed no other service than to connect defendant's mains in the street with such general receiving or service pipe.

It was shown at the trial that plaintiff was a lessee of the prem-

ises occupied by him, and the defendant offered to prove that the defendant never constructed or installed the pipes within the Grand Opera House Building, and offered to prove that such gas pipes were installed by the owner of the building and were a part thereof; also that the stoppage of the supply of gas on the occasion referred to in the complaint was occasioned solely by the defect in construction and design of the pipes within the building; that defendant's meter was attached to the distributing pipe on plaintiff's leased premises for the purpose of measuring the consumption of gas used by the plaintiff, and also offered to prove that the defect which caused the shortage of gas consisted of faulty construction in the basement of the Grand Opera House Building at a point between plaintiff's premises and the point where defendant had connected its mains with the general service pipe.

All these offers were rejected, upon the ground that the evidence was immaterial, for the reason that the defendant had undertaken to furnish the plaintiff with such meters and connections as should be necessary to furnish gas at his premises, and that if defendant utilized the pipes or extensions in the Grand Opera House Building for such distribution, and there were defects in such pipes, that was a matter of no concern to plaintiff.

It is our opinion that the trial court misapprehended the nature of the contract. If the system of gas piping within the Grand Opera House Building was installed by the owner or by the general lessee of the building for their own convenience and for the use of the various tenants, including the premises occupied by the plaintiff, and the only connection which the defendant had with the system of pipes was to attach its main with the general service pipe, then the plaintiff and the defendant must have contemplated that condition of things when they entered into the contract. When plaintiff took his lease the premises were already piped for gas, and an individual pipe delivered gas to the basement of his premises, and at that point the amount of gas consumed by him was estimated by the installation of a meter. Under the terms of his lease the plaintiff was obligated to pay for whatever gas was consumed by him, and when he signed the order for gas referred to

in the record he did so with reference to the existing arrangement. Defendant's Exhibit 1 is a request to furnish gas in the following language:

"The undersigned requests the St. Paul Gaslight Company to furnish such meters and connections as shall be necessary therefor, and to supply gas for the premises known as No. 384 St. Peter street, occupied as a restaurant. * * * "

The acceptance of this order by defendant and the installation of the meter does not warrant the conclusion, assumed by the plaintiff, that defendant was required to furnish gas, even if the system of piping there installed should be destroyed. The plaintiff was charged with knowledge that the pipes belonged to his lessor, and he had no reasonable ground for assuming or believing that they had been installed, or belonged to or were under the control of the defendant, or that any other method or system of supplying him with gas could be or would be adopted than the one then installed. It follows that if the defect causing the shortage in gas occurred in some of the pipes within the building and beyond the control of the defendant, and occurred without fault on its part, then there is no liability, and the evidence offered should have been received.

Reversed, and new trial granted.